**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Q EXCELSIOR ITALIA SRL, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 1:21-CV-01166 |
| v. | ) | |
| | ) | Honorable Judge Gary S. Feinerman |
| ZURICH AMERICAN INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT ZURICH AMERICAN INSURANCE COMPANY'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.      Introduction …………………………………………………...      1

II.     Background …………………………………………………..      3

        A.  The Excelsior's Allegations Against Zurich ...………………………...      3

        B.  The Italian Decrees…………....…………………………………………      4

        C.  The Policy ...…………………………………………………………...      5

III.    Principles Governing Interpretation of Insurance Policies ...……………...      8

IV.     Applicable Legal Standards …………………………………….........      9

V.      Excelsior Has Not Stated And Cannot State A Claim For Breach Of
        Contract ...………………………………………………………....      10

        A.  Excelsior Fails To Allege Direct Physical Loss Or Damage To
            Property ……………….……………………………………………….      10

        B.  The Microorganism Exclusion Applies ...……………………………...      19

        C.  Excelsior Cannot Plausibly Argue That Its Claims Are Covered Under
            The Civil Authority Coverage, Ingress/Egress Coverage, Or
            Contingent Time Element Coverage ……………….............................      21

VI.     Plaintiff Cannot Recover Under The Cancellation Of Bookings Coverage
        Because This Coverage Is Exhausted ...………………………………      23

VII.    Plaintiff's Declaratory Judgment Claims Must Be Dismissed ...…………..      24

VIII.   Plaintiff's Complaint Should Be Dismissed With Prejudice .......................      24

IX.     Conclusion ………………………………………………………….      25

## TABLE OF AUTHORITIES

**Cases**

*6593 Weighlock Drive, LLC v. Springhill SMC Corp.*,
   2021 WL 1419049, Index No. 4799/2020 (Sup. Ct. of Onondaga Cty., NY,
   April 9, 2021) ...……………………………………………………. 2, 12

*A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*,
   925 F.3d 1205 (11th Cir. 2019)……………………………………………. 23

*ABC Diamonds Inc. v. Hartford Cas. Ins. Co.*,
   No. 20-CV-7097 (N.D. Ill. April 6, 2021) ...……………………………… 2

*AFM Mattress Co., LLC v. Motorists Com. Mut. Ins. Co.*,
   2020 WL 6940984, No. 20-CV-3556 (N.D. Ill. Nov. 25, 2020) ……………… 20, 21

*Amari v. Radio Spirits, Inc.*,
   219 F. Supp. 2d 942 (N.D. Ill. 2002) ……………………………………… 24

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) …………………………………………………… 9

*Bend Hotel Dev. Co., LLC v. Cincinnati Ins. Co.*,
   2021 WL 271294, No. 20-CV-4636 (N.D. Ill. Jan. 27, 2021) ...……………... 13

*Bloomgarden v. Allstate Fire & Cas. Ins. Co.*,
   2020 WL 6375169, No. 19-CV-62879 (S.D. Fla. Oct. 30, 2020) ……………… 23

*Bozek v. Erie Ins. Grp.*,
   2015 IL App (2d) 150155, 46 N.E.3d 362 ……………………………………… 20

*Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*,
   2020 WL 7889047, No. 20-CV-4249 (N.D. Ill. Dec. 22, 2020),
   *appeal pending*, No. 21-1420 (7th Cir.) …...………………………………….. 13

*Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*,
   10 N.E.3d 902 (Ill. 2014) ……………………………………………… 8

*Brunswick Panini's, LLC v. Zurich Am. Ins. Co.*,
   2021 WL 663675, No. 20-CV-1895 (N.D. Ohio Feb. 19, 2021),
   *appeal pending*, No. 21-3222 (6th Cir.)…………………………………… 14, 21

*Causeway Auto., LLC v. Zurich Am. Ins. Co.*,
   2021 WL 486917, No. 20-CV-8393 (D.N.J. Feb. 10, 2021) (unpublished) …… 21

*Chief of Staff, LLC v. Hiscox Ins. Co., Inc.,*
  2021 WL 1208969, No. 20- CV-3169 (N.D. Ill. Mar. 31, 2021) ……………… *passim*

*Cohn v. Guar. Rate Inc.,*
  130 F. Supp. 3d 1198 (N.D. Ill. 2015) …………………………………………….. 24

*Crescent Plaza Hotel Owner L.P. v. Zurich Am. Ins. Co.,*
  2021 WL 633356, No. 20-CV-3463 (N.D. Ill. Feb. 18, 2021),
  *appeal pending*, No. 21-1316 (7th Cir.) ……………………………………………… 2, 12, 16

*DaimlerChrysler Corp. v. Cuno,*
  547 U.S. 332 (2006) …………………………………………………………. 23

*DeVore v. Am. Fam. Mut. Ins. Co.,*
  383 Ill. App. 3d 266, 891 N.E.2d 505 (2008) ………………………………….. 20

*Dickie Brennan & Co. v. Lexington Ins. Co.,*
  636 F.3d 683 (5th Cir. 2011) …………………..…………………………….… 22

*First Ins. Funding Corp. v. Fed. Ins. Co.,*
  284 F.3d 799 (7th Cir. 2002) …………………………………………………… 9

*Gonzalez-Koeneke v. West,*
  791 F.3d 801 (7th Cir. 2015) …………………………………………………… 25

*Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of Am.,*
  2020 WL 5938755, No. 20-CV-2939 (N.D. Ga. Oct. 6, 2020) ……………….. 14, 22, 23

*Hillcrest Optical, Inc. v. Cont'l Cas. Co.,*
  2020 WL 6163142, No. 20-CV-275 (S.D. Ala. Oct. 21, 2020) ……………..…. 15, 24

*Hobbs v. Hartford Ins. Co. of the Midwest,*
  214 Ill. 2d 11, 823 N.E.2d 561 (2005)………………………………………….. 8

*Hopkins v. State Farm Fire & Cas. Co.,*
  2019 IL App (5th) 180285-U, *appeal denied,* 140 N.E.3d 266 (Ill. 2020) …….. 20

*Jones, Walker, Waechter, Poitevent, Carrere & Denegre, LLP v. Chubb Corp.,*
  2010 WL 4026375, No. CIV.A. 09-6057 (E.D. La. Oct. 12, 2010) ……………. 22

*Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.,*
  440 F. Supp. 3d 520 (D.S.C. 2020) ……………………………….…………….. 22

*Lapham-Hickey Steel Corp. v. Prot. Mut. Ins. Co.,*
  166 Ill.2d 520 (1995) ………………………………………………………… 8, 9

*Lathrop v. Safeco Ins. Co.*,
  2020 IL App (1st) 190741, *appeal denied,* 159 N.E.3d 975 (Ill. 2020) ........... 9

*Legal Sea Foods, LLC v. Strathmore Ins. Co.*,
  2021 WL 858378, No. 20-CV-10850 (D. Mass. Mar. 5, 2021),
  *appeal pending*, No. 21-1202 (1st Cir.) .............................................. 17

*Malaube, LLC v. Greenwich Ins. Co.*,
  2020 WL 5051581, No. 20-CV-22615 (S.D. Fla. Aug. 26, 2020) ...................... 14

*Mashallah, Inc. v. West Bend Mut. Ins. Co.*,
  2021 WL 679227, No. 20-CV-5472 (N.D. Ill. Feb. 22, 2021),
  *appeal pending*, No. 21-1507 (7th Cir.) ................................................ 20

*Metalworking Lubricants Co. v. U.S. Fire Ins. Co.*,
  460 F. Supp. 2d 897, 900 (S.D. Ind. 2006) ............................................ 23

*Michael Cetta, Inc. v. Admiral Indem. Co.*,
  2020 WL 7321405, No. 20-CV-4612 (S.D.N.Y. Dec. 11, 2020) ................... 14, 15, 22

*MRI Healthcare Ctr. of Glendale, Inc. v. State Farm Gen. Ins. Co.*,
  187 Cal. App. 4th 766, 115 Cal. Rptr. 3d 27 (2010) .................................. 11

*NAR Bus. Park, LLC v. Ozark Auto. Distribs., LLC*,
  430 F. Supp. 3d 443 (N.D. Ill. 2019) .................................................. 8

*Narayan Rao v. Abbott Labs.*,
  2013 WL 1768697 (N.D. Ill. Apr. 24, 2013) ........................................... 10

*O'Brien Sales & Mktg., Inc. v. Transportation Ins. Co.*,
  2021 WL 105772, No. 20-CV-02951 (N.D. Cal. Jan. 12, 2021),
  *appeal pending*, No. 21-15241 (9th Cir.) .............................................. 22

*One Place Condo., LLC v. Travelers Prop. Cas. Co. of Am.*,
  2015 WL 2226202, No. 11-CV-2520 (N.D. Ill. April 22, 2015) .................... 8, 11

*Out West Rest. Grp. Inc. v. Affiliated FM Ins. Co.*,
  2021 WL 1056627, No. 20-CV-06786 (N.D. Cal. Mar. 19, 2021),
  *appeal pending*, No. 21-15585 (9th Cir.) .............................................. 18

*Outboard Marine Corp. v. Liberty Mut. Ins. Co.*,
  154 Ill.2d 90 (1992) .................................................................. 9

*Pappy's Barber Shops, Inc. v. Farmer's Grp., Inc.*,
  2020 WL 5847570 (S.D. Cal. Oct. 1, 2020) ............................................ 24

*Phillips v. Prudential Ins. Co. of Am.*,
    714 F.3d 1017 (7th Cir. 2013) ……………………………………………… 9

*Real Hosp., LLC v. Travelers Cas. Ins. Co. of Am.*,
    2020 WL 6503405, No. 20-CV-00087 (S.D. Miss. Nov. 4, 2020) ...…………… 15, 16

*Riverwalk Seafood Grill Inc. v. Travelers Cas. Ins. Co. of Am.*,
    2021 WL 81659, No. 20-CV-3768 (N.D. Ill. Jan. 7, 2021) …...……………… 20

*Roundabout Theatre Co. v. Cont'l Cas. Co.*,
    302 A.D.2d 1, 751 N.Y.S.2d 4 (2002) ……………………………………….. 15

*R.T.G. Furniture Corp. v. Hallmark Speciality Ins. Co.*,
    2021 WL 686864, No. 20-CV-2323 (M.D. Fla. Jan. 22, 2021),
    *appeal pending*, No. 21-10490 (11th Cir.) ….………………………………… 17

*St. Michael's Orthodox Cath. Church v. Preferred Risk Mut. Ins. Co.*,
    146 Ill. App. 3d 107, 496 N.E.2d 1176 (1986) ...……………………………….. 8

*Sandy Point Dental, PC v. Cincinnati Ins. Co.*,
    488 F. Supp. 3d 690 (N.D. Ill. 2020), *reconsideration denied*, 2021 WL
    83758, No. 20-CV-2160 (N.D. Ill. Jan. 10, 2021),
    *appeal pending*, No. 21-1186 (7th Cir.) ……………………………………… 9, 12

*Santo's Italian Café d/b/a Santosuosso Pizza Pasta Vino v. Acuity Ins. Co.*,
    2020 WL 7490095, No. 20-CV-1192 (N.D. Ohio Dec. 21, 2020),
    *appeal pending*, No. 21-3068 (6th Cir.) …...……………………………….. 16

*Siren Salon, Inc. v. Liberty Mut. Ins. Co.*,
    No. 20-CV-3108, (N.D. Ill. Mar. 22, 2021) ………………………...………… 20

*Smeez Inc. v. Badger Mut. Ins. Co.*,
    No. 20-CV-1132 (S.D. Ill. Mar. 22, 2021) …………………………………….. 13

*Snyder v. King*,
    745 F.3d 242 (7th Cir. 2014) …………………………………………….....  24

*South Texas Med. Clinics, P.A. v. CNA Fin. Corp.*,
    2008 WL 450012, No. CIV.A. H-06-4041 (S.D. Tex. Feb. 15, 2008) …………  22

*Spokeo v. Robbins*,
    136 S. Ct. 1540 (2016) ………………………………………………………  23

*South Texas Med. Clinics, P.A. v. CNA Fin. Corp.*,
    2008 WL 450012, No. CIV.A. H-06-4041 (S.D. Tex. Feb. 15, 2008) ………….  22

*Steve Foley Cadillac, Inc. v. New York Marine and Gen. Ins. Co.*,
    No. 20-L-6774 (Cir. Ct. of Cook Cty. Feb. 19, 2021) …………………………….. *passim*

*Temperature Serv. Co., Inc. v. Acuity*,
    2018 WL 1378345, No. 16-CV-2271 (N.D. Ill. Mar. 15, 2018) ..……………… 20

*Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*,
    2021 WL 972878, No. 20-CV-665 (W.D. Tex. Jan. 21, 2021),
    *appeal pending*, No. 21-50078 (5th Cir.) .…………………………………… 17

*TJBC, Inc. v. Cincinnati Ins. Co., Inc.*,
    2021 WL 243583, No. 20-CV-815 (S.D. Ill. Jan. 25, 2021),
    *appeal pending*, No. 21-1203 (7th Cir.) …..………………………………… 13

*Travelers Cas. Ins. Co. of Am. v. Geragos & Geragos*,
    2020 WL 6156584 (C.D. Cal. Oct. 19, 2020) …………………………………… 24

*Uncork & Create LLC v. Cincinnati Ins. Co.*,
    2020 WL 6436948, No. 20-CV-00401 (S.D.W. Va. Nov. 2, 2020), *motion to*
    *amend judgment denied*, 2021 WL 966886 (Mar. 3, 2021),
    *appeal pending*, No. 21-1311 (4th Cir.) .…………………………………….. 18

*Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.*,
    2020 WL 6562332, No. 20-CV-03750 (N.D. Cal. Nov. 9, 2020),
    *appeal pending*, No. 21-15366 (9th Cir.) .…………………………………… 15

*Western Cas. & Sur. Co. v. Brochu*,
    105 Ill. 2d 486, 475 N.E.2d 872 (1985) …………………………………….... 9

*Whiskey River on Vintage, Inc. v. Illinois Cas. Co.*,
    2020 WL 7258575 (S.D. Iowa Nov. 30, 2020),
    *appeal pending*, No. 20-3707 (8th Cir.) .…………..………………………….. 10

*Zajas, Inc. v. Badger Mut. Ins. Co.*,
    2021 WL 1102403, No. 20-CV-1055 (S.D. Ill. Mar. 23, 2021),
    *appeal pending*, No. 21-1660 (7th Cir.) .…………..………………………… 13, 14

**Rules**

Federal Rules of Civil Procedure 12(b)(1) …………………………………….. 23

Federal Rules of Civil Procedure 12(b)(6) …………………………………….. 9

**Treatises**

10A Couch on Ins. § 148:46 (3d Ed. 2019) …....…………………………………     11

**Miscellaneous**

Encyclopedia Britannica,
      https://www.britannica.com/science/microbiology/Types-of-Microorganisms ....     19

"Infectious agents and how they cause disease," Immunobiology: The Immune
      System in Health & Disease (5th ed. 2001),
      https://www.ncbi.nlm.nih.gov/books/NBK27114/ ................................................     19

James H. Jorgensen; Michael A. Pfeller, A Clinician's Dictionary of Pathogenic
      Microorganisms 237-73 (2004) ………………………………………………     19

McGraw-Hill Dictionary of Scientific & Technical Terms 1337 (2003) ..............     19

Mosby's Dictionary of Medicine, Nursing & Health Professions 1139 (9th ed.
      2013) ………………………………………………………………………..     19

New Oxford American Dictionary 1105 (3d ed. 2010) ….………………………     19

Taber's Cyclopedic Medical Dictionary 1512-13 (22d ed. 2013) ………………..     19

Webster's New World College Dictionary 924 (5th ed. 2018) ……………………..     19

## I.     **Introduction**

Q Excelsior Italia Srl ("Excelsior" or "Plaintiff") seeks coverage under an insurance policy issued by Zurich American Insurance Company ("Zurich") for its alleged losses arising out of COVID-19.  Plaintiff owns the Westin Excelsior Rome, a Marriott-flagged hotel.  Zurich issued an insurance policy to Marriott International, Inc., which is the policy under which the Plaintiff is seeking coverage.

Plaintiff alleges its losses are due to "the numerous and evolving mandates from local and national authorities around the world and the European Union, *issued in response to the COVID-19 crisis*."  (Compl., ¶ 4, emphasis added.)  Plaintiff refers to travel restrictions around the world, and a reduction in international flights to and from Italy.  (Compl, ¶¶ 27-29.)

Plaintiff concludes that COVID-19 and the virus, SARS-CoV-2, were present "at and surrounding the Westin Excelsior Rome".  (Compl., ¶ 32.)  Plaintiff makes this assumption only because it claims that "multiple guests and at least six employees of Excelsior tested positive for COVID-19."  (*Id.*)  Plaintiff does not allege that these positive tests or the presumed presence of the virus at the Excelsior were the reason for its business income and other losses.

Plaintiff fails to and cannot state a cause of action for a number of reasons.

First, Plaintiff has not and cannot allege "direct physical loss or damage" to the Excelsior, which is required to trigger coverage under the insuring provisions in dispute (with the exception of Cancellation of Bookings, addressed separately herein).  The Policy's Civil Authority and Ingress/Egress coverage provisions require direct physical loss or damage within 15 statute miles of the insured location.  There was no actual physical alteration by the virus to the Excelsior's property or any property within 15 statute miles of the Excelsior; there was no permanent dispossession of any property.

On March 18, 2021, Judge Gettleman, applying Illinois law, dismissed a lawsuit brought by a Marriott-flagged hotel against Zurich, holding that there was no coverage under the same Marriott policy before this Court, because the insured failed to establish "direct physical loss or damage", a prerequisite for coverage. *Crescent Plaza Hotel Owner, L.P. v. Zurich American Ins. Co.*, 2021 WL 633356, No. 20-CV-03463 (N.D. Ill. Feb. 18, 2021).

On April 9, 2021, New York Judge Karalunas dismissed another lawsuit brought by Marriott hotels against Zurich under the same policy before this Court and referring to the *Crescent Plaza* decision, because the insured failed to establish "direct physical loss or damage". *6593 Weighlock Drive, LLC et al. v. Springhill SMC Corp.,* 2021 WL 1419049, Index No. 4799/2020 (New York Sup. Ct., Onondaga Cty., April 9, 2021).

Further, this Court has also dismissed COVID-19 cases for failing to show direct physical loss or damage. *Chief of Staff, LLC v. Hiscox Ins. Co., Inc.*, 2021 WL 1208969, No. 20-CV-03169 (Mar. 31, 2021); *ABC Diamonds Inc. v. Hartford Cas. Ins. Co.,* No. 20-CV-7097 (N.D. Ill. April 6, 2021) (minute order dismissing case without prejudice). There are other cases applying Illinois law, as well as other cases across the country, that have dismissed complaints for the same reason.

Second, even if Plaintiff can prove physical loss or damage to its property, the policy does not insure any loss, damage, claim, cost, expense or other sum directly or indirectly arising out of or relating a "microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health." The coronavirus is a microorganism and a substance whose presence poses an actual or potential threat to human health. Therefore, the exclusion clearly applies.

Third, there is no civil authority, ingress or egress, or contingent time element coverage for several independent reasons.

- 2 -

Fourth, although the Policy's Cancellation of Bookings coverage would apply, this coverage has been exhausted for unrelated losses which pre-dated COVID-19. Under this provision, Zurich pays Marriott for cancellation of bookings claims submitted by Marriott itself or other insureds on the policy until an annual aggregate limit for this coverage is fully reached. The annual aggregate has been, in fact, fully reached by Zurich's payment of other cancellation of booking claims. Accordingly, no dispute exists regarding coverage under the Policy's Cancellation of Bookings provision.

For these reasons, the Court should dismiss Plaintiff's entire complaint with prejudice.

## II.  Background

### A.  The Excelsior's Allegations Against Zurich

Plaintiff is the owner and manager of the Westin Excelsior Rome hotel, located in Rome, Italy. (Compl., ¶ 11.) Westin Excelsior Rome is part of the Marriot International, Inc. chain of hotels. (Compl., ¶ 36.)

Plaintiff alleges that beginning in February 2020, travel throughout Europe and the world was severely restricted, and the Westin Excelsior Rome's bookings decreased to virtually nothing. (Compl., ¶ 39.) Plaintiff adds that there were "severe travel restrictions, both in and out of Italy" imposed around the world, and that "most international airlines stopped or severely reduced flights to or from Italy during Spring of 2020." (Compl., ¶¶ 27-29.)

Plaintiff alleges its losses are due to "the numerous and evolving mandates from local and national authorities around the world and the European Union, ***issued in response to the COVID-19 crisis.***" (Compl., ¶ 4, emphasis added.) Plaintiff refers to decrees and orders issued by the Italian government in March 2020. (Compl., ¶¶ 25-26.).

Plaintiff makes the conclusion that COVID-19 and the virus, SARS-CoV-2, were present "at and surrounding the Westin Excelsior Rome". (Compl., ¶ 32.) The only facts it pleads to

- 3 -

attempt to support the theory that the virus was actually present is that "multiple guests and at least six employees of Excelsior testified positive for COVID-19." (*Id.*) Plaintiff does not allege that these positive tests or the presumed presence of the virus at the Excelsior were the reason for its business income or other losses.

Plaintiff seeks coverage for its alleged losses resulting from the interruption of business and extra expenses under the Policy's Time Element Coverages. Plaintiff also claims there is coverage for Interruption by Civil or Military Authority as well as Ingress/Egress coverage. Plaintiff also seeks Cancellation of Bookings coverage. Plaintiff also mentions coverage for Decontamination Costs. Plaintiff also claims that its costs may be covered under the Contingent Time Element and Protection and Preservation of Property coverages. Plaintiff's Complaint has two counts, one for Breach of Contract and one for Declaratory Judgment.

### B.      The Italian Decrees

Plaintiff refers to decrees issued by the Italian government in March 2020. (Compl., ¶¶ 25-26.) Even though the heart of Plaintiff's claim are these Italian decrees (as well as "mandates from local and national authorities and the world and the European Union"), Plaintiff does not attach the Italian Decrees to its Complaint. This Court can consider the relevant Italian Decrees in ruling on Zurich's Motion to Dismiss, and Zurich is providing copies of the same.[1]

The Italian government issued certain decrees in March 2020 and in October/November 2020 in order to contain the spread of the COVID-19 virus in Italy and to contain and manage the COVID-19 epidemiological emergency in Italy. See Gallarti Decl., ¶¶7-9, 12. The Italian Decrees in March 2020 and in October/November 2020 did not require hotels in Rome to close. See

---

[1]      In ruling on a motion to dismiss, this Court can consider documents referenced in the Complaint under the doctrine of incorporation by reference, and can also take judicial notice of the Italian Decrees. See Zurich's Request for Incorporation By Reference and For Judicial Notice. The applicable Italian Decrees are attached the Declaration of Paolo Gallarati, a Partner with NCTM, in Milan, Italy.

Gallarati Decl., ¶¶ 9, 13. In fact, although the March 2020 Decrees required some suspension of commercial activities throughout Italy, hotels were one industry that was specifically exempted and was allowed to remain open. *Id.* Even other commercial or industrial activities that would ensure the continuity of the supply chain to hotels were exempted and allowed to continue. *Id.*

### C. The Policy

The Policy, which is attached to the Complaint, was issued to Marriott International, Inc., for the policy period of April 1, 2019 to April 1, 2020. (Compl., ¶ 43.) It is a property insurance policy. It is not a stand-alone loss of income policy.

The Policy, in the Property Damage section, provides:

### 3. PERILS INSURED AGAINST

> This Policy covers property, as described in this Policy, against all risks of direct physical loss or damage, except as hereinafter excluded, while located as described in this Policy occurred during this policy period.

(Compl., Exhibit 1, Policy, page 15 of 79.) Direct physical loss or damage is the cornerstone of all coverages (other than a policy coverage extension for Cancellation of Bookings). If Excelsior cannot prove this element, it cannot state a claim.

Even if Plaintiff meets the requirements of the insuring agreement, there is no coverage if an exclusion applies. The Policy contains the following Microorganism Exclusion:

> [T]his policy does not insure any loss, damage, claim, cost, expense or other sum directly or indirectly arising out of or relating to:
>
> > mold, mildew, fungus, spores or *other microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health.*
>
> This exclusion applies regardless whether there is (i) any physical loss or damage to insured property; (ii) any insured peril or cause, whether or not contributing concurrently or in any sequence; (iii) any loss of use, occupancy, or functionality; or (iv) any action required, including but not limited to repair, replacement, removal cleanup, abatement, disposal, relocation, or steps taken to address medical or legal concerns.

- 5 -

(Policy, Endorsement # 4, emphasis added.)

The Policy contains certain Time Element coverages, stating in the Loss Insured section:

A.     This Policy insures TIME ELEMENT loss, as provided in the TIME ELEMENT COVERAGES, directly resulting from direct physical loss or damage of the type insured by this Policy.

(Policy, page 35 of 79.)  Once again, direct physical loss or damage is required, and it must be of the type insured; that is, not excluded.  Further, the TIME ELEMENT loss must be "directly resulting from" the direct physical loss or damage for there to be coverage.  In other words, to recover under the TIME ELEMENT COVERAGES for Business Interruption and Extra Expense, such loss must have been caused by the direct physical loss or damage to the insured's property. Plaintiff has to prove this critical element to establish coverage, and this it cannot do.

The Time Element coverages also include certain Coverage Extensions, including:

**D.     INGRESS/EGRESS**

This Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured due to the necessary interruption of the Insured's business due to impairment of ingress to or egress from an Insured Location, whether or not the premises or property of the insured is damaged, provided that such impairment is a direct result of direct physical damage of the type insured by this Policy, to the kind of property not excluded by this Policy.

*** 

**K.     INTERRUPTION BY CIVIL AND MILITARY AUTHORITY**

This Policy is extended to insure loss sustained by the Insured during the period of time when, as a result of physical loss or damage not otherwise excluded herein, to the kind of property not otherwise excluded herein and access to the property of the insured is impaired by order or action of civil or military authority.

(Policy, pages 44 and 48 of 79.)  Once again, physical loss or damage not otherwise excluded to property is a mandatory element of coverage.  Under both of these coverages, the physical loss or

damage has to been to property within 15 statute miles of the Westin Excelsior Rome. (Policy, Declarations – Section A, 8., page 5 of 79.)

The Policy also contains Cancellation of Bookings coverage. (Policy, Time Element – Section C. 3. E., pages 44-46 of 79.) This provides, in part, coverage for the cancellation of, and/or inability to accept bookings or reservations for accommodation, and/or interference with the business at an Insured Location as a direct result of the "outbreak of contagious and/or infectious disease as well as restrictive guidance or travel advisories placed on a region or area by Centers for Disease Control, World Health Organization, or comparable authority … within a radius of 5 miles of an Insured Location ...." The Policy contains an annual aggregate[2] sublimit for this coverage, meaning that the most Zurich will pay for all claims submitted by Marriot and other insureds under the Policy is limited to $5 million in the aggregate (comprised of two, $2.5 million limits). (Policy, Declarations – Section A 8., page 4 of 79.)

The Policy also contains coverage for Decontamination Costs. (Policy, Property Damage - Section B.4.H., page 19 of 79.) This coverage requires, in part, contamination of an insured property "as a result of direct physical damage insured by this Policy".

The Policy also contains coverage for Protection and Preservation of Property (Policy, Property Damage - Section V., page 26 of 79.) This coverage requires either "actual … or … immediately imminent, insured direct physical loss or damage to … insured property."

The Policy also contains coverage for Contingent Time Element (Policy, Time Element – Section C. 3. B., page 43 of 79.) This coverage requires that the actual loss sustained and extra expense incurred by the insured has to be directly resulting from direct physical loss or damage of

---

[2]     The Policy states, "When a limit of liability is shown as applying in the Aggregate during Any Policy Year, the Company's maximum limit of liability will not exceed such limit during any policy year regardless of the number of locations and coverages involved." (Policy, Declarations - Section A, 8. Program Limits of Liaibility, page 3 of 79.)

the type insured, and to property of the type insured, at any locations of supplier or customers which provide patrons to the insured location.

### III.    Principles Governing Interpretation Of Insurance Policies

Under Illinois law, the interpretation of an insurance policy is a question of law.[3]  See *One Place Condo., LLC v. Travlers Prop. Cas. Co. of Am.*, 2015 WL 2226202, at *2 (N.D. Ill. Apr. 22, 2015).  An insurance policy is a contract, and the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies. *Hobbs v. Hartford Ins. Co. of the Midwest*, 214 Ill.2d 11 (2005).  The insured has the burden to prove that a claim falls within the policy's coverage.  *St. Michael's Orthodox Catholic Church v. Preferred Risk Mut. Ins. Co.*, 146 Ill. App. 3d 107, 109 (1 Dist. 1986).

"In construing an insurance policy, the court's primary objective is to 'ascertain and give effect to the intentions of the parties as expressed by the language of the policy.'"  *One Place Condo., LLC v. Travelers Prop. Cas. Co. of Am.*, 2015 WL 2226202, at *2 (N.D. Ill. April 22, 2015).  If the terms of an insurance policy are clear and unambiguous, they must be applied as written given their plain and ordinary meaning.  *One Place,* 2015 WL 2226202, at *3.  "A policy term is not ambiguous because the term is not defined within the policy or because the parties can suggest creative possibilities for its meaning."  *Lapham–Hickey Steel Corp. v. Prot. Mut. Ins. Co.*, 166 Ill.2d 520, 529 (1995).  In addition, a court may not read an ambiguity into a policy just to

---

[3]    The Policy's choice-of-law provision states that "[t]his Policy will be governed by United States of America Law," but does not state which state's law shall apply.  (Policy, Loss Adjustment and Settlement, Section D.9., page 60 of 79.)  Illinois law applies because it is the law of the forum and a conflict does not exist between Illinois and any other state that would be outcome determinative.  *See NAR Bus. Park, LLC v. Ozark Auto. Distribs., LLC*, 430 F. Supp. 3d 443, 451 (N.D. Ill. 2019) ("Illinois courts apply forum law by default, and 'a choice-of-law determination is required only when the moving party has established an actual conflict between state law'" that would make a difference in the outcome) (quoting *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 10 N.E.3d 902, 909 (Ill. 2014)).

find in favor of the insured. *Lapham–Hickey Steel*, 166 Ill.2d at 530. "If the words in the policy are unambiguous, a court must afford them their plain, ordinary, and popular meaning." *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 108 (1992). "If the words of a policy can reasonably be given their plain, ordinary, and popular meaning, the provisions should be applied as written and the parties should be bound to the agreement they made." *Western Cas. & Surety Co. v. Brochu*, 105 Ill.2d 486, 495 (1985). "However, a 'policy provision is not rendered ambiguous simply because the parties disagree as to its meaning,' and courts 'will not strain to find an ambiguity where none exists.'" *Lathrop v. Safeco Ins. Co.*, 2020 Il App (1st) 190741, ¶ 29 (July 23, 2020).

## IV. <u>Applicable Legal Standard</u>

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff "must plead sufficient facts to plausibly suggest that [it] has a right to relief and raise that possibility above the 'speculative level.'" *Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 488 F. Supp. 3d 690, 692 (N.D. Ill. 2020), *reconsideration denied*, 2021 WL 83758 (N.D. Ill. Jan. 10, 2021). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *accord First Ins. Funding Corp. v. Fed. Ins. Co.*, 284 F.3d 799, 804 (7th Cir. 2002) (the court "need not accept as true 'conclusory statements of law or unsupported conclusions of fact'") (citation omitted).

In ruling on a motion to dismiss, "the court assumes the truth of the complaint's well-pleaded factual allegations, though not its legal conclusions." *Chief of Staff LLC*, 2021 WL 1208969, at *1. Further, the "court must also consider 'documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice,' …." *Id.*, citing *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013). Here, the Court may consider the Policy, the Italian decrees referenced in the

- 9 -

complaint, and the judicially noticeable fact that the coronavirus can be cleaned from surfaces using standard household-cleaning products, as confirmed by the CDC and EPA.

## V.     Excelsior Has Not Stated And Cannot State A Claim For Breach Of Contract

Excelsior alleges that Zurich breached its Policy by not providing coverage for COVID-19 business related losses. See Complaint, ¶¶80-85. To state a claim for breach of contract, Excelsior "must allege facts to plausibly suggest" that there was a breach. *Narayan Rao v. Abbott Labs.*, 2013 WL 1768697, at *7 (N.D. Ill. Apr. 24, 2013). Excelsior has failed to do so, because it does not allege facts establishing that coverage exists under the Policy, and the facts it does allege establish that the Policy's Microorganism exclusion applies.

### A.     Excelsior Fails To Allege Direct Physical Loss Or Damage To Property

The Policy unambiguously requires direct physical loss or damage to property to trigger coverage. The word "physical" modifies both loss and damage. This requirement is contained in the Perils Insured Against provision, and repeated in the Time Element coverages, including the Ingress/Egress and Interruption by Civil or Military Authority, and Contingent Time Element provisions, as well as in the Decontamination Costs and Preservation of Property provisions. Plaintiff has the burden to prove direct physical loss or damage. As explained below, Plaintiff cannot plausibly state a claim that there has been direct physical loss or damage to its premises (or other property depending upon the coverage provision at issue). The mere loss or reduction in use of its hotel as a result of the Italian decrees is not enough. The Policy's terms do not provide coverage for "direct physical loss of **_use_**" of the premises.[4] Further, Plaintiff's presumption that

---

[4]     In fact, there is an exclusion for loss of use: "[w]e will not pay for loss or damage caused by or resulting from loss of market, loss of use, or delay." (Policy, page 31 of 79.) See also *Whiskey River on Vintage, Inc. v. Illinois Cas. Co.*, 2020 WL 7258575 (S.D. Iowa Nov. 30, 2020) (exclusion for "loss of use" precluded coverage).

COVID-19 and SARS-Co-V-2 were present at the Westin Excelsior Rome is insufficient as a matter of law to trigger coverage.

Property insurance coverage is triggered by physical loss or damage. This is a fundamental principle, which has been well established in the law for decades. If the insured cannot prove physical loss or damage, there is no coverage, period. As explained in a leading insurance treatise:

> The requirement that the loss be "physical," given the ordinary definition of that term, is widely held to exclude losses that are intangible or incorporeal, and, thereby to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.

10A *Couch On Insurance* § 148.46 (3d Ed. 2019).[5]

Illinois law similarly requires physical loss or damage to trigger coverage. *See Steve Foley Cadillac, Inc. v. New York Marine and Gen. Ins. Co.*, No. 20-L-6774 (Cir. Ct. of Cook Cty. Feb. 19, 2021); *One Place,* 2015 WL 2226202, at *3 (*citing* 10A Couch on Insurance, 3rd Ed., § 148.46, for the principle that coverage is triggered in all-risk policies by physical loss or damage and the "requirement that the loss be 'physical' … is widely held to exclude losses that are intangible or incorporeal' such as 'a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.'")

A vast multitude of Courts around the country, including in the Northern District of Illinois and Cook County, have found this and similar policy language to be unambiguous, and granted motions to dismiss or for judgment on the pleadings in favor of insurance companies, ruling that

---

[5]     See also *MRI Healthcare Center of Glendale v. State Farm Gen. Ins. Co.*, 187 Cal. App. 4th 766, 780, 115 Cal. Rptr. 27, 37-38 (2010) ("For there to be a 'loss' within the meaning of the policy, some *external force* must have acted upon the insured property to cause a *physical change* in the condition of the property, i.e., it must have been 'damaged' within the common understanding of that term.") (emphasis in original).

.

insureds cannot state a cause of action for physical loss or damage arising out of COVID-19 related governmental orders or the alleged presence of the virus.

Judge Gettleman in the Northern District of Illinois was one of the first to consider the issue under Illinois law. On September 21, 2020, the Court rejected the insured's argument that the closure of a dentist's office due to Gov. Pritzker's orders constituted direct physical loss, and granted a motion to dismiss in favor of the insurer. *Sandy Point Dental, P.C. v The Cincinnati Ins. Co.*, 488 F. Supp. 3d 690 (N.D. Ill. Sept. 21, 2020). As the Court explained: "In essence, plaintiff seeks insurance coverage for financial losses as a result of closure orders. The coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of the property. Consequently, plaintiff has failed to plead a direct physical loss-a prerequisite to coverage." *Id.* at 694.

A few months later, on March 18, 2021, Judge Gettleman, applying Illinois law, dismissed a lawsuit brought by a Marriott-flagged hotel against Zurich, holding that there was no coverage under the same Marriott policy before this Court, because the insured had failed to show "direct physical loss or damage", a prerequisite for coverage. *Crescent Plaza Hotel Owner, L.P. v. Zurich American Ins. Co.*, 2021 WL 633356 (N.D. Ill. Feb. 18, 2021). *Accord 6593 Weighlock Drive.*

On February 19, 2021, Cook County Law Division Judge Esrig dismissed a complaint because the plaintiffs failed to allege a direct physical loss of or damage to property, and a virus exclusion applied. *Steve Foley Cadillac, Inc. d/b/a Steve Foley Cadillac, et al. v. New York Marine and Gen. Ins. Co., et al.*, No. 20-L-6774 (Cir. Ct. of Cook County, Feb. 19, 2021, Judge Esrig). A copy is attached to the Declaration of Jonathan K. Barger as Exhibit 8. The plaintiffs had specifically pled that one of plaintiffs' executive officers, among others, had become infected with, and spread the COVID-19 virus at plaintiffs' businesses. They pled that COVID-19 molecules physically infected the property surfaces, causing direct physical loss or damage. The Court, held

that the temporary contamination does not constitute physical loss of or damage to property, explaining:

> Here, plaintiff does not and cannot allege that its property was altered in appearance, shape, color or other material dimension. Temporary contamination of a surface by bacteria or viruses appearing naturally in the environment does not constitute physical damage to that surface within the usual and ordinary meaning of that phrase. Instead, plaintiff seeks to recover for diminution of value, loss of use and other economic loss as a result of contamination. *Travelers* leaves no doubt that Illinois law requires actual physical injury to property.

*Id.*

This Court recently dismissed a case for failure to state a claim for direct physical loss of or damage to property, holding that "physical loss" refers to "a deprivation caused by a tangible or concrete change in or to the thing that was lost", and that loss of use due to governmental orders was not a concrete or tangible loss of property at the insured's premises. *Chief of Staff, LLC v. Hiscox Ins. Co., Inc.*, 2021 WL 1208969, at *2 (N.D. Ill. Mar. 31, 2021).

Other courts have also dismissed complaints because the insured could not meet the physical loss or damage requirement. *See, e.g., Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 2020 WL 7889047 (N.D. Ill. Dec. 22, 2020) (Judge Kocoras) (no direct physical loss of or damage to the property, and the plaintiff does not allege that the property was changed or altered in any way); *Bend Hotel Devel. Co., LLC v. Cincinnati Ins. Co.*, 2021 WL 271294, at *3 (N.D. Ill. Jan. 27, 2021) (Judge Bucklo) (even if the plaintiff had alleged the presence of the coronavirus on the premises, the virus does not cause physical loss or damage); *TJBC, Inc. v. Cincinnati Ins. Co.*, 2021 WL 243583, at *4 (S.D. Ill. Jan. 25, 2021) (Judge Dugan) (direct physical loss "unambiguously requires some form of tangible loss or damage to the physical dimension of Plaintiff's property"). *See also Smeez Inc. d/b/a Big Daddy's Disco Diner v. Badger Mut. Ins. Co.*, No. 20-CV-1132 (S.D. Ill. Mar. 22, 2021) (Judge Dugan) and *Zajas, Inc. v. Badger Mut. Ins. Co.*,

2021 WL 1102403 (S.D. Ill. Mar. 23, 2021) (Judge Dugan) (both granting motions to dismiss for failure to state a claim for direct physical loss of or damage to property).[6]

Zurich anticipates Plaintiff will argue that it is seeking to recover under the "direct physical loss" prong, and that the alleged loss of use of the Westin Excelsior Rome is enough to trigger coverage, without the need to show any actual physical alteration to property. This interpretation, though, ignores the threshold requirement that the loss or damage be both "direct" and "physical". As numerous courts have held, this argument does not revive Plaintiff's deficient complaint.

Courts have uniformly held that "direct" and "physical" modify both "loss" and "damage" in the policy's insuring agreement. *See, e.g., Malaube, LLC v. Greenwich Ins. Co.*, 2020 WL 5051581, at *7 (S.D. Fla. Aug. 26, 2020) (further stating "[t]hat means that any 'interruption in business must be caused by some *physical problem* with the covered property … which must be caused by a covered cause of loss.'" (Emphasis in original.) Thus, to satisfy its burden, Plaintiff must prove either direct physical loss or direct physical damage. There is nothing direct or physical about the loss of use alleged by Plaintiff. Property is physically lost when it is stolen, and theft of property would be the direct physical loss of that property. Likewise, property is physically lost when it is completely destroyed. For example, when a fire burns a building to the ground, it is a "total loss." By comparison, a fire causes physical damage when the structure is damaged but repairable. There is nothing redundant about the terms "physical loss" and "physical damage." *Henry's Louisiana Grill, Inc. v. Allied Ins. Co. of America*, 2020 WL 5938755, at *5 (N.D. Ga. Oct. 6, 2020) ("the plain meanings of ['loss of' and 'damage to'] indicate they have different and complementary meanings in this context."); *Michael Cetta, Inc. d/b/a Sparks Steak House v.*

---

[6]       *See also Brunswick Panini's, LLC v. Zurich American Ins. Co.,* 2021 WL 663675, at *8 (N.D. Ohio Feb. 19, 2021) (dismissing complaint brought against Zurich because neither the virus nor state government orders caused "direct physical loss of or damage to" the insured's property).

*Admiral Ins. Co.*, 2020 WL 7321405, at *9 (S.D.N.Y. Dec. 11, 2020) ("A close analysis of the text of the provision here confirms that the terms 'loss' and 'damage' are not superfluous. First, as noted in *Roundabout Theater*,[7] the term 'loss' would seem to include 'theft or misplacement,' which would not constitute damage to the property. Further, 'loss' would extend to the *complete* destruction of property, whereas 'damage' contemplates a lesser injury.") (Emphasis in original).

Courts that have analyzed the "direct physical loss" property prong have concluded that, like a theft, it requires the total physical dispossession or deprivation of property and/or physical alteration of property. Mere loss of use is not enough. *See, e.g., Water Sports Kauai, Inc. v. Fireman's Fund Ins. Co.,* 2020 WL 6562332, at *5-7 (N.D. Cal. Nov. 9, 2020) (rejecting plaintiff's "deprivation of functionality" argument and explaining that: "Numerous courts have found that materially identical allegations do not trigger coverage under similarly worded policies as a result of government closure orders. The cases consistently conclude that there needs to be some *physical* tangible injury (like a total deprivation of property) to support 'loss of property' or a *physical* alteration or active presence of a contaminant to support 'damage to' property." (emphasis in original)); *Real Hospitality, LLC v. Travelers Cas. Ins. Co. of Am.*, 2020 WL 6503405, at *5 (S.D. Miss. Nov. 4, 2020) (explaining that under either prong, property is involved: "[t]he property is either physically lost, *i.e.*, the insured suffers a permanent dispossession of the property, or it is damaged…. Plaintiff's contention that 'loss of property' includes loss of usability is not sustainable."); *Hillcrest Optical, Inc. v. Cont'l Cas. Co.*, 2020 WL 6163142, at *8 (S.D. Ala. Oct. 21, 2020) (holding that "direct physical loss of" required tangible alteration of property, citing numerous Covid-19 cases); *Michael Cetta*, *Inc. v. Admiral Indem. Co.*, 2020 WL 7321405, at *6 (S.D.N.Y. Dec. 1, 2020) ("The idea that 'loss of use' does not constitute a 'direct physical loss of

---

7     *Roundabout Theater Co. v. Cont'l Cas. Co.*, 751 N.Y.S.2d 4 (App. Div. 2002).

or damage to' property resonates in ordinary experience outside the context of insurance coverage.").

Judge Gettleman, in *Crescent Plaza Hotel Owner, L.P. v. Zurich American Ins. Co.*, No. 20-cv-3463 (N.D. Ill. Feb. 18, 2021), rejected the insured's argument that the use of the disjunctive "or" between "loss" and "damage" provides coverage when there is a mere loss of use: "Once again, this court disagrees. The plain wording of the phrase requires either a permanent disposition of the property due to a <u>physical</u> change ("loss"), or <u>physical</u> injury to the property requiring repair ("damage")." *Id.* (emphasis in original).

> As this Court explained the direct physical loss and direct physical damage prongs:
>
> Read naturally, the two phrases can be read to exclude loss of use without rendering either superfluous. To illustrate, consider a thief who attempts to steal a desktop computer. If the thief succeeds, the computer is "physical[ly] los[t]" but not necessarily physical[ly] … damage[d]." If the thief cannot lift the computer, so instead of stealing it takes a hammer to its monitor in frustration, the computer would be "physical[ly] … damage[d]" but not "physcial[ly] los[t]." Yet if the thief were only to change the password so that employees could not log in, there would be neither "physical … damage" nor "physical loss," though the computer would be unusable for some while. The Business Income provision might cover the first two cases, but it does not cover the third.

*Chief of Staff, LLC*, 2021 WL 1208969, at *3.[8]

---

[8] The Policy's "period of liability" provision also confirms that the Policy requires that the loss or damage be physical, as the period starts from the time of direct physical loss or damage, and ends "when with due diligence and dispatch the building and equipment could be: (i) repaired or replaced; and (ii) made ready for operations, under the same or equivalent physical and operating conditions that existed prior to the damage." (Policy, pages 49-50 of 79.) As this Court recognized in *Chief of Staff*, if there has been no physical alteration to the condition of the property, there is nothing to repair or replace. *Chief of Staff*, 2021 WL 1208969, at *3. *See also Santo's Italian Café d/b/a Santosuosso Pizza Pasta Vino v. Acuity Ins. Co.*, 2020 WL 7490095, at *10 (N.D. Ohio Dec. 21, 2020) ("construing 'direct physical loss' or 'direct physical damage' to cover intangible losses, such as the economic losses Santo's seeks to cover, would render large parts of the *'period of restoration'* definition nonsensical because intangible losses cannot be repaired, rebuilt, or replaced."); *Real Hospitality, LLC*, 2020 WL 6503405, at *6 (referring to the period of restoration: "If there is no requirement that physical loss of or physical damage to the property be involved, the definition of the time period for paying the claim makes no sense.")

Zurich anticipates that Plaintiff will argue that its assumption that the virus was present at the Westin Excelsior is enough to salvage its complaint. Once again, as numerous courts have already held, this is not enough.

Even if COVID-19 and the virus were present at some point in time at the Westin Excelsior, that presence does not constitute physical loss or damage to property to trigger coverage. As Judge Esrig held in *Steve Foley Cadillac*, the temporary contamination of a surface by a virus does not cause physical damage to that surface. As numerous other Courts have held, the presence of the virus does not cause physical damage because the virus can be cleaned and disinfected.[9] *See, e.g., Legal Sea Foods, LLC v. Strathmore Ins. Co.*, 2021 WL 858378, at *3 (D. Mass. Mar. 5, 2021) (Even if the insured had alleged the presence of COVID-19 at its properties, it would not be entitled to coverage: "A virus is incapable of damaging physical structures because 'the virus harms human beings, not property.'"); *Terry Black's Barbeque, LLC v. State Auto. Mut. Ins. Co.,* 2021 WL 972878, at *8 (W.D. Tex. Jan. 21, 2021) ("Even assuming that the virus that causes COVID-19 was present at Plaintiffs' premises, it would not constitute the direct physical loss or damage required to trigger coverage under the Policy because the virus can be eliminated. The virus does not threaten the structures covered by property insurance policies, and can be removed from surfaces with routine cleaning and disinfectant."); *R.T.G. Furniture Corp. v. Hallmark Specialty Ins. Co.*, 2021 WL 686864, at *3 (M.D. Fla. Jan. 22, 2021) (dismissing case even though the plaintiff specifically pled that the coronavirus particles were present on its property, and people infected with or carrying COVID-19 were on the property: "[T]he Court concludes that the mere presence of the coronavirus on RTG's property does not constitute physical damage or loss. This

---

[9] CDC Guidelines state that if the SARS-CoV-2 virus is on surfaces or objects it naturally dies within a short period of time and that the virus can be eliminated with soap, water, and disinfectant. *See* CDC Guidance for Cleaning and Disinfecting, dated Sept. 16, 2020, and the CDC's guide entitled Cleaning and Disinfecting Your Facility, dated Jan. 5, 2021, attached to Zurich's Request for Judicial Notice.

is because COVID-19's presence on property is temporal.  In other words, COVID-19's temporary physical presence on RTG's property is insufficient to constitute 'direct physical loss of or damage to' property."); *Uncork & Create LLC v. Cincinnati Ins. Co.,* 2020 WL 6436948, at *5 (S.D.W.Va. Nov. 2, 2020), *motion to amend judgment denied*, 2021 WL 966886 (Mar. 3, 2021) ("[E]ven when present, COVID-19 does not threaten the inanimate structures covered by property insurance policies, and its presence on surfaces can be eliminated with disinfectant. Thus, even actual presence of the virus would not be sufficient to trigger coverage for physical damage or physical loss to property."); *Out West Restaurant Grp., Inc. v. Affiliated FM Ins. Co.*, 2021 WL 1056627 (N.D. Cal. Mar. 19, 2021) (citing to numerous cases and holding no physical loss or damage because the virus can be cleaned and disinfected from surfaces, even though insured alleged it was aware of over 100 employees testing positive for COVID-19 across numerous insured restaurants).

Further, Plaintiff cannot  recover its alleged business income losses as a matter of law.  As the Policy makes clear, any TIME ELEMENT losses must be "directly resulting from" the direct physical loss or damage for there to be coverage.  Here, Plaintiff alleges that its losses were caused by and resulted from "the numerous and evolving mandates from local and national authorities around the world and the European Union, ***issued in response to the COVID-19 crisis***."  (Compl., ¶ 4, emphasis added.)  Plaintiff does not allege that the presumed presence of the virus or people with COVID-19 it suspects were at its hotel caused it to cease, suspend or limit its operations. Even if Plaintiff could overcome the other hurdles to revive its deficient Complaint, this missing element results in the dismissal of its case.

### B.     The Microorganism Exclusion Applies

The Policy does not cover risks of direct physical loss or damage that are excluded.   Even if there were direct physical loss or damage, the Microorganism Exclusion applies.

The Microorganism Exclusion provides that the Policy "does not insure any loss, damage, claim, cost, expense or other sum directly or indirectly arising out of or relating to":

> mold, mildew, fungus, spores or other microorganism *of any type, nature, or description,* including but not limited to *any substance whose presence poses an actual or potential threat to human health.*

The term "microorganism" is commonly understood to include viruses, according to both medical and scientific dictionaries and non-technical sources,[10] and a virus clearly is a "substance" that "poses an actual or potential threat to human health."   Accordingly, the Policy's Microorganism Exclusion must be interpreted to exclude coverage for losses caused by viruses.

The Microorganism Exclusion also includes "any loss of use, occupancy, or functionality" of the covered property.

The Policy's anti-concurrent-causation language underscores that no coverage exists.   The Microorganism exclusion states that it does not insure any loss, damage, claim, cost, expense or other sum directly or indirectly arising out of or relating to the virus, and applies regardless of

---

[10]     *See, e.g.*, McGraw-Hill Dictionary of Scientific & Technical Terms 1337 (2003) ("Microorganism … a microscopic organism, including bacteria, protozoans, yeast, viruses, and algae."); Mosby's Dictionary of Medicine, Nursing & Health Professions 1139 (9th ed. 2013) ("Microorganism … any tiny, usually microscopic entity capable of carrying on living Processes. It may be pathogenic. Kinds of microorganisms include bacteria, fungi, protozoan, and viruses."); Taber's Cyclopedic Medical Dictionary 1512-13 (22d ed. 2013) ("Microorganism … A living organism too small to be perceived with the naked eye, esp. a virus …."); James H. Jorgensen; Michael A. Pfeller, A Clinician's Dictionary of Pathogenic Microorganisms 237-73 (2004) (section on viruses); Webster's New World College Dictionary 924 (5th ed. 2018) ("Microorganism … any microscopic or ultramicroscopic animal, plant, bacterium, virus, etc."); New Oxford American Dictionary 1105 (3d ed. 2010) ("Microorganism … a microscopic organism, esp. a bacterium, virus, or fungus."); "Types of Microorganisms," Encyclopedia Britannica, https://www.britannica.com/science/microbiology/Types-of-microorganisms; *see also* "Infectious agents and how they cause disease," Immunobiology: The Immune System in Health & Disease (5th ed. 2001), https://www.ncbi.nlm.nih.gov/books/NBK27114/.

- 19 -

whether there is any insured peril or cause, whether or not contributing concurrently or in any sequence.[11]

Plaintiff has admitted that the various decrees which it alleges caused its losses were "issued in response to the COVID-19 crisis." (Compl., ¶ 4.) Accordingly, the exclusion applies.

Courts around country have considered whether the virus exclusion applies where an insured argues that governmental orders have caused its properties to close, it was unable to function as a business, lost the use of its premises, and allegedly suffered direct physical loss or damage. A multitude of courts have consistently held that the exclusion applies. The list of courts dismissing cases based on the virus exclusion is too long to cite. Courts applying Illinois law, as well as cases involving Zurich, include the following:

- *AFM Mattress Co., LLC v. Motorists Com. Mut. Ins. Co.,* 2020 WL 6940984, at *3 (N.D. Ill. Nov. 25, 2020) (Judge Shah) ("The policy contemplated that a government entity might take some action in response to a virus, and specifically excluded coverage in that scenario");

- *Riverwalk Seafood Grill, Inc. v. Travelers Cas. Ins. Co. of America,* 2021 WL 81659 (N.D. Ill. Jan. 7, 2021) (Judge Kocoras) (Because the Virus Exclusion is clear, Riverwalk's coverage argument fails with our without the anti-concurrent ("ACC") provision.");

- *Steve Foley Cadillac, Inc. v. New York Marine and Gen. Ins. Co.*, No. 20-L-6774 (Cir. Ct. of Cook County Feb. 19, 2021) (highlighting that the executive orders were issued in response to the virus);

- *Mashallah, Inc. v. West Bend Mut. Ins. Co.*, 2021 WL 679227 (N.D. Ill. Feb. 22, 2021) (Judge Kocoras) (two policies at issue, one where the virus exclusion contained anti-concurrent cause language, and one where the virus exclusion did not contain anti-concurrent cause language, and both exclusions applied);

- *Siren Salon, Inc. v. Liberty Mut. Ins. Co.*, No. 20-CV-3108, (N.D. Ill. March 22, 2021) (Judge Lefkow) ("In this case, a virus (the Coronavirus) capable of causing illness or disease (COVID-19) caused Siren Salon's loss at least indirectly (through the Executive Order).");

---

[11] Illinois state courts, and federal courts applying Illinois law, enforce and apply anti-concurrent cause language. *See, e.g., Hopkins v. State Farm Fire & Cas. Co.*, 2019 Il App (5th) 180285-U, ¶¶ 32-34; *Bozek v. Erie Ins. Group,* 2015 Il App (2d) 150155; *DeVore v. Am. Fam. Ins. Co.*, 383 Ill. App. 3d 266, 269 (2d Dist. 2008); *Temperature Serv. Co., Inc. v. Acuity*, 2018 WL 1378345, at *7 (N.D. Ill. 2018).

- *Causeway Auto. LLC, et al. v. Zurich American Ins. Co., et al.*, 2021 WL 486917, at *6 (D.N.J. Feb. 10, 2021) (unpublished opinion) ("The Executive Orders were issued for the sole reasons of reducing the spread of the virus that causes COVID-19 and would not have been issued but for the presence of the virus in the State of New Jersey."); and

- *Brunswick Panini's, LLC v. Zurich American Ins. Co.*, 2021 WL 663675 at *9 ( "COVID-19 is a virus; and therefore, a microorganism. Loss or damage directly or indirectly caused by COVID-19 is not covered… [because] the virus prompted the [government] Order and at a minimum, indirectly caused Plaintiffs' claimed loss, necessitating denial under the Exclusion.").

**C.      Excelsior Cannot Plausibly Argue That Its Claims Are Covered Under The Civil Authority Coverage, Ingress/Egress Coverage, Or Contingent Time Element Coverage**

There is no civil authority, ingress/egress, or contingent time element coverage for several, independent reasons.

First, under the civil authority and ingress/egress coverage, there must be physical loss or damage to property within 15 statute miles of the Westin Excelsior Rome.  Under the contingent time element coverage, there must be direct physical loss or damage to property at a location of a supplier or customer.  Plaintiff has identified no such properties with physical loss or damage.

Second, the physical loss or damage must be of the type insured.  In light of the Microorganism exclusion, any possible physical loss or damage was excluded.  *AFM Mattress, LLC*, 2020 WL 6940984, at *4 (no civil authority coverage because the virus exclusion applies).

Third, the action of civil authority must have been issued in response to the physical loss or damage within 15 statute miles of the Westin Excelsior Rome.  Here, none of the Italian decrees were issued in response to any direct physical loss or damage to property located within fifteen miles of the insureds' premises.  They were not issued in response to prior property damage. Instead, they were each issued to slow and stop the spread of COVID-19.

Courts have held that a civil authority order has to have been issued due to or as a result of property damage that occurred prior to the issuance of the order.  If the order was issued as a

precaution in advance of anticipated or threatened damage to property, there is no civil authority coverage. In other words, there has to be a causal link between prior property damage and a subsequently issued order. *See, e.g., Kelaher, Connell & Conner, P.C. v. Auto-Owners Ins. Co.*, 2020 WL 886120 (D.S.C. Feb. 24, 2020) (no civil authority coverage for a law firm that evacuated its premises after the Governor issued a mandatory evacuation order in anticipation of Hurricane Florence; the order did not reference damage or destruction to property, but was issued because of the threat of the Hurricane and the language of the order "focused on the potential, future, or predicted impacts on life and property.") [12]

Applying the above principles, numerous courts have held that there is no civil authority coverage arising out of governmental orders issued in response to COVID-19. *See, e.g., Chief of Staff, LLC*, 2021 WL 1208969, at *5-6 (no civil authority coverage where there were no allegations that there was physical damage within one mile of insured premises, and, even if there was, the closure order was not the result of or issued in response to such physical damage); *O'Brien Sales and Mktg., Inc. v. Transportation Ins. Co.*, No. 20-CV-02951, 2021 WL 105772, at *5 (N.D. Cal. Jan. 12, 2021) (no civil authority coverage as orders were issued to stop the spread of COVID-19 and not as a result of any physical loss of or damage to property); *Michael Cetta, Inc.*, 2020 WL 7321405, at *11-12 (no civil authority coverage because, in part, plaintiff did not allege any specific damage to property near the insured's restaurant); *Henry's Louisiana Grill, Inc.*, 2020 WL

---

[12]  See also *Dickie Brennan & Co., Inc. v. Lexington Ins. Co.*, 636 F.3d 683 (5th Cir. 2011) (no civil authority coverage for restaurants that had to close due to the Mayor of New Orleans' mandatory evacuation order made in anticipation of Hurricane Gustav); *accord, Jones, Walker, Waechter, Pointevent Carrere & Denegre LLP v. Chubb Corp.*, 2010 WL 4026375 (E.D. La. 2010); *South Texas Med. Clinics, P.A. v. CNA Fin. Corp.*, 2008 WL 450012 (S.D. Tex. 2008) (no civil authority coverage for medical clinics that had to close when a county judge issued an evacuation order in anticipation of the threat of damage to the county from Hurricane Rita).

5938755, at *6 (no civil authority coverage because, in part, insureds did not identify any particular property around their premises which was damaged or had its access restricted).

## VI. Plaintiff Cannot Recover Under The Cancellation Of Bookings Coverage Because This Coverage Is Exhausted

Finally, Plaintiff cannot recover for cancellation of bookings because the Policy's annual aggregate has been fully paid, thereby exhausting this potential available coverage. See Foraker Decl. It is black-letter law that parties lack standing to bring suit unless they have suffered an injury-in-fact that is "actual or imminent, not conjectural or hypothetical." *Spokeo v. Robbins*, 136 S. Ct. 1540, 1547-48 (2016) (internal quotation marks omitted); *Metalworking Lubricants Co. v. U.S. Fire Ins. Co.*, 460 F. Supp. 2d 897, 900 (S.D. Ind. 2006) (plaintiff could not sue for insurance coverage because it had not yet suffered an injury-in-fact). Further, plaintiffs must demonstrate standing for each claim they bring and for each form of relief sought—having standing to bring one claim does not inoculate the plaintiff's other claims from challenge for want of standing. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). Excelsior has not suffered any past injury and is not imminently about to suffer a future injury because Zurich would not deny Excelsior's claim for coverage if any coverage were remaining.[13] Accordingly, the Court should dismiss Counts I and II to the extent that relate to Cancellation of Bookings coverage pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction because no dispute exists regarding coverage under the "Cancellation of Bookings" provision.

---

[13] *See A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1212 (11th Cir. 2019) ("When insurance benefits are fully exhausted … there is no case or controversy because no money is owed regardless of how the case is ultimately decided."); *Bloomgarden v. Allstate Fire & Cas. Ins. Co.*, 2020 WL 6375169, at *5 (S.D. Fla. Oct. 30, 2020) (no standing when plaintiff is seeking coverage over and beyond what is available under an insurance policy).

### VII.    Plaintiff's Declaratory Judgment Claims Must Be Dismissed

Excelsior's standalone claims for declaratory judgment (Complaint, "Second Cause of Action", ¶¶ 86-92) should be dismissed for two additional reasons.  First, because Excelsior has failed to state a claim for any of its insurance claims, it is not entitled to the declaratory judgment relief it seeks for those provisions.  See *Snyder v. King*, 745 F.3d 242, 250 (7th Cir. 2014) (plaintiff "cannot obtain … declaratory relief" against defendants if "he has not adequately pleaded a suit against them"); *Hillcrest Optical*, 2020 WL 6163142, at *9 (in case seeking coverage for COVID-19-related business losses, dismissing declaratory judgment claim because plaintiff had failed to plead a plausible breach of contract claim).  Second, judges in this Circuit routinely "decline to hear a declaratory judgment action" where, as here, "the claim for declaratory judgment substantially overlaps with Plaintiff's substantive claims."  *Cohn v. Guar. Rate Inc.*, 130 F. Supp. 3d 1198, 1205 (N.D. Ill. 2015).  Courts dismiss such claims because, when the "substantive suit would resolve the issues raised by the declaratory judgment action, the declaratory judgment action serve[s] no useful purpose."  *Amari v. Radio Spirits, Inc.*, 219 F. Supp. 2d 942, 944 (N.D. Ill. 2002).  Accordingly, Excelsior's declaratory judgment claims should be dismissed as duplicative of its breach of contract claims.

### VIII.    Plaintiff's Complaint Should Be Dismissed With Prejudice

Courts around the country have dismissed with prejudice claims seeking coverage for coronavirus-related business losses because "[n]o amount of artful pleading by Plaintiffs can state a plausible claim that they suffered any business income losses due to direct physical loss of or damage to property at their premises."  *Pappy's Barber Shops, Inc. v. Farmer's Grp., Inc.*, 2020 WL 5847570, at *1-2 (S.D. Cal. Oct. 1, 2020); *Travelers Cas. Ins. Co. of Am. v. Geragos & Geragos*, 2020 WL 6156584, at *5 (C.D. Cal. Oct. 19, 2020).  This Court should do likewise.  A court may dismiss a complaint with prejudice if amendment would be futile because the claim

could never be plausible or fails as a matter of law.  *See Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015).  Excelsior cannot overcome the legal conclusion that flows inexorably from the cases cited above that the coronavirus does not cause "direct physical loss or damage" to property.  Nor can Excelsior allege facts that would overcome the Microorganism exclusion.  Nor can Excelsior plead around the undeniable fact that the civil authority orders were not issued "as a result of physical loss or damage" to property.  Dismissal with prejudice is warranted because each of these grounds is insurmountable.

## IX.    Conclusion

Defendant Zurich American Insurance Company respectfully requests that its Motion to Dismiss be granted, that Plaintiff's Complaint be dismissed with prejudice, and for such other relief as the Court deems proper.

Dated:  April 23, 2021

Respectfully submitted,

BUTLER WEIHMULLER KATZ CRAIG LLP

 /s/ K. Clark Schirle
K. Clark Schirle (ARDC No. 6199270)
*cschirle@butler.legal*
Jonathan K. Barger (ARCD No. 6277079)
*jbarger@butler.legal*
115 S. LaSalle Street, Suite 3200
Chicago, Illinois 60603
(312) 462-9200
*Attorneys for Zurich American Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 23, 2021, a copy of the foregoing **Defendant Zurich American Insurance Company's Memorandum in Support of its Motion to Dismiss** was filed electronically through the Court's ECF system, with notice of this filing being electronically transmitted to the following counsel of record.

Douglas A. Albritton
Jeffrey M. Hansen
Actuate Law, LLC
641 W. Lake St., 5th Floor
Chicago, IL 60661
(312) 579-3131
*doug.albritton@actuatelaw.com*
*jeff.hansen@actuatelaw.com*

Robin L. Cohen
Meredith Elkins
Cohen Ziffer Frenchman & McKenna LLP
1350 Avenue of the Americas, 25th Floor
New York, NY 10019
(212) 584-1890
*rcohen@cohenziffer.com*
*melkins@cohenziffer.com*

*Attorneys for Plaintiffs*

  /s/ K. Clark Schirle
K. Clark Schirle
BUTLER WEIHMULLER KATZ CRAIG LLP
115 S. LaSalle Street, Suite 3200
Chicago, IL 60603