UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Q EXCELSIOR ITALIA SRL, | ) | |
| | ) | |
| Plaintiff, | ) | 21 C 1166 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| ZURICH AMERICAN INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Q Excelsior Italia, the owner of the Westin Excelsior Rome hotel, sues Zurich American Insurance Company, its insurer, alleging wrongful denial of coverage for losses that it suffered due to the COVID-19 pandemic. Doc. 53. Zurich moves under Civil Rules 12(b)(1) and 12(b)(6) to dismiss the suit. Doc. 54. The motion is granted in part and denied in part.

**Background**

In resolving a Rule 12(b)(6) motion, the court assumes the truth of the operative complaint's well-pleaded factual allegations, but not its legal conclusions. *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Excelsior's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Excelsior as those materials allow. *See Domanus v. Locke Lord, LLP*, 847 F.3d 469, 478-79 (7th Cir. 2017). In setting forth the facts at the pleading stage, the court does not vouch for their accuracy.

1

*Goldberg v. United States*, 881 F.3d 529, 531 (7th Cir. 2018). (The court will set forth additional facts below when addressing Zurich's Rule 12(b)(1) motion.)

Excelsior is a company that owns and manages the Westin Excelsior Rome, a luxury hotel in Rome, Italy. Doc. 53 at ¶¶ 2, 15. In March 2020, in response to the COVID-19 pandemic, the Italian government imposed a series of orders suspending non-essential activities and limiting movement to "approved work, health or urgent needs." *Id*. at ¶¶ 52-53. As a result, "all events, conferences, fairs, shows, and other large gatherings in Rome, which typically would attract visitors to the Westin Excelsior Rome and its bars and restaurant," were cancelled. *Id*. at ¶ 53. Other nations imposed similar orders, "requir[ing] individuals to stay at home except for essential purposes" and restricting travel or imposing quarantines on travelers coming to and from Italy. *Id*. at ¶¶ 54-55. Although the governmental orders "did not mandate the closure of hotels," the hotel's bookings "decreased to virtually nothing," as "[h]uge amounts of guest bookings were cancelled in response to the pandemic and/or the [o]rders, and new bookings were not made." *Id*. at ¶ 59, 64.

The COVID-19 virus was present "in, on, and around the Westin Excelsior Rome," as "[m]ultiple guests and at least six employees … tested positive for COVID-19." *Id*. at ¶ 67. The complaint alleges that droplets carrying the virus "can remain in the air for minutes or hours" and "on surfaces for up to twenty-eight days." *Id*. at ¶¶ 28-29. The complaint further alleges that the virus "compromises the physical integrity of the property to which it attaches and the air in which it exists," which "renders such structures and such property uninhabitable, unusable, and unsafe for an extended period of time." *Id*. at ¶ 41. "[T]o remove the coronavirus from its properties," Excelsior incurred expenses in "adding safety dividers and sanitation stations, and purchasing additional cleaning supplies, cleaning services, and personal protective equipment for

2

its staff and guests." *Id*. at ¶¶ 9, 68. But according to Excelsior, "even extraordinary cleaning and state-of-the-art ventilation cannot consistently remove or eliminate the coronavirus." *Id*. at ¶ 47.

Excelsior was insured under a commercial property insurance policy issued by Zurich. *Id*. at ¶¶ 75-76. Excelsior submitted two insurance claims for the lost business income and extra expenses it incurred due to the pandemic, neither of which Zurich responded to. *Id*. at ¶¶ 103-106. Excelsior interpreted Zurich's failure to respond to mean that it does not intend to cover Excelsior's losses. *Id*. at ¶ 110.

## Discussion

Excelsior seeks damages for Zurich's alleged breach of the policy and a declaratory judgment that the policy provides coverage. *Id*. at ¶¶ 112-125. The meaning of a written contract "is generally a question of law for the court." *Stampley v. Altom Transp., Inc.*, 958 F.3d 580, 586 (7th Cir. 2020) (internal quotation marks omitted). The parties agree that Illinois law governs interpretation of the policy. Doc. 55 at 15 n.4; Doc. 60 at 14 n.2.

Under Illinois law, an insurance policy, like any contract, "is to be construed as a whole, giving effect to every provision, if possible, because it must be assumed that every provision was intended to serve a purpose." *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314 (Ill. 2006). "[The court's] primary function is to ascertain and give effect to the intention of the parties, as expressed in the policy language." *Founders Ins. Co. v. Munoz*, 930 N.E.2d 999, 1003 (Ill. 2010). "Although policy terms that limit an insurer's liability will be liberally construed in favor of coverage, this rule of construction only comes into play when the policy is ambiguous." *Rich v. Principal Life Ins. Co.*, 875 N.E.2d 1082, 1090 (Ill. 2007) (internal quotation marks omitted). "While [the court] will not strain to find an ambiguity where none

3

exists, neither will [it] adopt an interpretation which rests on gossamer distinctions that the average person, for whom the policy is written, cannot be expected to understand." *Munoz*, 930 N.E.2d at 1004 (internal quotation marks and citation omitted).

Excelsior asserts coverage under eight provisions of the Zurich policy: (1) the "Business Interruption" provision, Doc. 53-1 at 52-53, § C.2.A; (2) "Extra Expense" provision, *id*. at 53-54, § C.2.B; (3) the "Civil Authority" provision, *id*. at 64, § C.3.K; (4) the "Ingress/Egress" provision, *id*. at 60, § C.3.D; (5) the "Contingent Time Element" provision, *id*. at 59, § C.3.B; (6) the "Decontamination Costs" provision, *id*. at 35, § B.4.H; (7) the "Protection and Preservation of Property" provision, *id*. at 42, § B.4.V; and (8) the "Cancellation of Bookings" provision, *id*. at 60-62, § C.3.E. Doc. 53 at ¶¶ 5, 82-98, 108. Zurich contends that the first seven provisions do not apply because each requires Excelsior to show "direct physical loss or damage," Doc. 55 at 14-15, 18-27, and that the policy's Microorganism Exclusion defeats coverage under those provisions in any event, *id*. at 27-29. While agreeing that the eighth provision applies, Zurich submits that Excelsior has already reached its annual limit for Cancellation of Booking claims. *Id*. at 30-31.

**I.      Provisions Requiring Direct Physical Loss or Damage**

Zurich contends, and Excelsior does not dispute, Doc. 60 at 31-32, that "[d]irect physical loss or damage is the cornerstone" for coverage under the first seven provisions, Doc. 55 at 14. Excelsior submits that it has sufficiently pleaded a "direct physical loss" by alleging (1) that "the shutdown orders effectively limited access and/or effectively prevented it from using its premises for its intended business" and (2) "the presence of the virus on its premises." Doc. 60 at 20-22. The Seventh Circuit has rejected both theories.

As to the first theory, the Seventh Circuit has repeatedly held that "mere loss of use due to COVID-related closures does not constitute 'direct physical loss' when unaccompanied by any

4

physical alteration to property." *E. Coast Ent. of Durham, LLC v. Houston Cas. Co.*, 31 F.4th 547, 550 (7th Cir. 2022); *see Sandy Point Dental, P.C. v. Cincinnati Ins. Co.*, 20 F.4th 327, 334 (7th Cir. 2021) ("Without any physical alteration to accompany it, … partial loss of use does not amount to a 'direct physical loss.'"); *Paradigm Care & Enrichment Ctr., LLC v. W. Bend Mut. Ins. Co.*, 33 F.4th 417, 421 (7th Cir. 2022) ("We held with respect to Illinois law that the phrase 'direct physical loss' in a commercial property insurance policy requires a physical alteration to property—that is, some alteration in appearance, shape, color or other material dimension.") (internal quotation and alteration marks omitted); *see also Windy City Limousine Co., LLC v. Cincinnati Fin. Corp.*, 2022 WL 1965903, at *1 (7th Cir. June 6, 2022) (same); *Green Beginnings, LLC v. W. Bend Mut. Ins. Co.*, 2022 WL 1700139, at *1 (7th Cir. May 27, 2022) (same). Excelsior's argument that the loss of use of its properties due to the COVID-19 shutdown orders is sufficient to plead "direct physical loss" accordingly fails. *See Sandy Point*, 20 F.4th at 331-333 (rejecting similar textual arguments in holding that "'direct physical loss' requires a physical alteration to property").

The complaint's allegations that the COVID-19 virus was physically present on the hotel's premises fare no better, as the Seventh Circuit and the Appellate Court of Illinois have consistently held that similar allegations do not rise to the level of physical alteration to property. *See E. Coast Ent. of Durham*, 31 F.4th at 551 ("The mere presence of the virus on surfaces did not physically alter the property, nor did the existence of airborne particles carrying the virus."); *Sandy Point*, 20 F.4th at 335 ("Even if the virus was present *and* physically attached itself to Sandy Point's premises, Sandy Point does not allege that the virus *altered* the physical structures to which it attached, and there is no reason to think that it could have done so."); *ABW Dev., LLC v. Cont'l Cas. Co.*, __ N.E.3d __, 2022 IL App (1st) 210930, ¶ 35 ("[E]ven assuming the

COVID-19 virus was present at the premises, the mere presence of the virus on surfaces does not constitute 'physical loss of or damage to property' because COVID-19 does not physically alter the appearance, shape, color, structure, or other material dimension of the property."); *Sweet Berry Cafe, Inc. v. Soc'y Ins., Inc.*, 193 N.E.3d 962, 974 (Ill. App. 2022) (same).

In pressing the contrary result, Excelsior cites cases involving "noxious, physical substance[s]," arguing that *Sandy Point* left open the possibility that "loss of use, unaccompanied by any physical alteration to property, might be so pervasive as effectively to qualify as a complete physical dispossession of property and thus a 'direct physical loss.'" Doc. 60 at 16-17, 21-22 (quoting *Sandy Point*, 20 F.4th at 334). True enough, "in rare cases," a plaintiff may plead "direct physical loss" by alleging "an access-or use-deprivation so substantial as to constitute a physical dispossession." *Windy City Limousine*, 2022 WL 1965903, at *1 (internal quotation marks omitted). But governing precedent repeatedly rejects the proposition that the presence of the COVID-19 virus at an insured property is among those rare cases. *See Paradigm Care*, 33 F.4th at 421 ("Absent [physical] alteration, direct physical loss occurs only when a risk causes complete physical dispossession of property, and the COVID-19 virus does not.") (internal quotation marks omitted); *Sandy Point*, 20 F.4th at 334-35 (noting that, unlike gas infiltration, where contamination makes "physical entry impossible, thus barring all uses by all persons," the COVID-19 virus's "impact on physical property is inconsequential: deadly or not, it may be wiped off surfaces using ordinary cleaning materials, and it disintegrates on its own in a matter of days"); *see also Green Beginnings*, 2022 WL 1700139, at *1 ("[W]e determined that COVID-19 does not generally result in complete physical dispossession of property."); *Sweet Berry Café*, 193 N.E.3d at 974 (distinguishing asbestos and noxious gas cases because, "unlike a noxious gas, … the virus's presence is easily remediated by routine, not specialized or costly,

cleaning and disinfecting or will die off after a few days"). That the presence of coronavirus caused a halt in bookings, Doc. 53 at ¶¶ 65-67, "may have … rendered untenable for a time" Excelsior's "intended operations," but that is insufficient to plead complete physical dispossession of a kind that qualifies as direct physical loss. *Windy City*, 2022 WL 1965903, at *1 (holding that the plaintiff's allegation "that the presence of the virus rendered its business 'effectively inoperable'" was insufficient to plead physical dispossession because the plaintiff's "premises were not rendered uninhabitable or unsuitable for all other conceivable uses").

Even if Excelsior had sufficiently pleaded "direct physical loss" for purposes of the first seven policy provisions, the policy's Microorganism Exclusion, Doc. 53-1 at 99, would defeat coverage. That exclusion bars coverage for losses "directly or indirectly arising out of or relating to: mold, mildew, fungus, spores or other microorganism of any type, nature, or description, including but not limited to any substance whose presence poses an actual or potential threat to human health." *Ibid*. In a case involving an insured hotel, the Seventh Circuit held that an identical exclusion "independently bar[red] coverage for the hotel's claimed losses." *Crescent Plaza Hotel Owner, L.P. v. Zurich Am. Ins. Co.*, 20 F.4th 303, 306 (7th Cir. 2021). Although Excelsior presses a contrary interpretation of the provision, Doc. 60 at 17-19, this court is bound by *Crescent Plaza*'s holding that "the term 'microorganism'" in the exclusion "unambiguously applies to viruses." 20 F.4th at 309-310. The Microorganism Exclusion therefore "provides a second, independent basis for denying coverage." *Id*. at 308.

## II. Cancellation of Bookings Provision

The Cancellation of Bookings provision covers losses resulting from the cancellation of bookings due to, among other things, "[t]he[] outbreak of contagious and/or infectious disease as well as restrictive guidance or travel advisories placed on a region or area by Centers for Disease Control, World Health Organization, or comparable authority" within five miles of the insured

premises. Doc. 53-1 at 60-62, § C.3.E. The parties agree that the provision provides coverage for the losses claimed by Excelsior. Doc. 55 at 11, 31; Doc. 60 at 33. Zurich nonetheless seeks dismissal under Rule 12(b)(1), arguing that Excelsior lacks Article III standing to seek relief under that provision. Doc. 55 at 30-31. In support, Zurich cites a declaration from one of its executives averring that "the Policy's annual aggregate [limit under the Cancellation of Bookings provision] has been fully paid, thereby exhausting this potential available coverage." *Ibid.*; *see* Doc. 23.

A defendant raising a factual challenge to subject matter jurisdiction under Rule 12(b)(1) may go outside the pleadings to seek dismissal for lack of standing. *See Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015); *see also* 5B Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1350 (3d ed. 2004). But Zurich's argument is not really a standing argument; rather, it is an argument that Excelsior is not entitled to damages from Zurich's refusal to pay under the Cancellation of Bookings provision because it has exhausted its coverage under that provision. The failure of the damages element of a contract claim goes to the merits of the claim, not standing. *See Cnty. of Cook v. Wells Fargo & Co.*, 544 F. Supp. 3d 833, 836-37 (N.D. Ill. 2021). Zurich cites *A&M Gerber Chiropractic LLC v. GEICO Gen. Ins. Co.*, 925 F.3d 1205, 1212 (11th Cir. 2019), for the contrary result, Doc. 55 at 31 n.15, but the plaintiff there sought only declaratory relief "without a claim for money damages for injuries already suffered" or "a substantial likelihood that he will suffer injury in the future." 925 F.3d at 1214-15. In fact, the Eleventh Circuit emphasized that there would not be a standing problem "if [the plaintiff] alleged breach of contract and sought damages," as Excelsior does here. *Id*. at 1214.

Accordingly, Excelsior's claim under the Cancellation of Bookings provision survives dismissal. That said, Zurich may move at any time for summary judgment on that claim if it can

show indisputably that Excelsior has not suffered any damages. *See TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007) ("Merely showing that a contract has been breached without demonstrating actual damage does not suffice, under Illinois law, to state a claim for breach of contract.").

### III. Declaratory Judgment Claim

In addition to the complaint's breach of contract claim, Excelsior seeks a declaratory judgment that it "is entitled to coverage under the Policy." Doc. 53 at ¶¶ 119-125. Because Excelsior's claim for coverage under the Cancellation of Bookings provision survives, Zurich's argument that Excelsior's declaratory judgment claim should be dismissed for failure to state a claim lacks merit as to that provision. Doc. 55 at 31. Zurich also argues that the declaratory judgment claim "substantially overlaps with [Excelsior]'s substantive claims." *Ibid.* (quoting *Cohn v. Guar. Rate Inc.*, 130 F. Supp. 3d 1198, 1205 (N.D. Ill. 2015)). That may be correct, but allowing the declaratory judgment claim to proceed will not impact the scope of discovery or alter the contours of the case at this stage. The court therefore denies Zurich's motion to dismiss the declaratory judgment claim, without prejudice to its challenging the claim as unnecessarily duplicative at summary judgment or trial.

### Conclusion

Zurich's motion to dismiss is denied as to Excelsior's claims under the Cancellation of Booking provision and otherwise is granted. The dismissal is with prejudice. The court has already granted Excelsior an opportunity to replead in light of the Seventh Circuit's first round of COVID-19 insurance decisions. Docs. 50-52. There is no reasonable basis to believe that Excelsior could plead a "direct physical loss" by amendment—and its opposition brief does not request an opportunity to replead. *See Sandy Point*, 20 F.4th at 335 (affirming the district court's denial of leave to amend because "there [wa]s no reason to think that [the plaintiff] could have"

alleged that "the virus *altered* the physical structures to which it attached"); *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018) ("Nothing in Rule 15, nor in any of our cases, suggests that a district court must give leave to amend a complaint where a party does not request it or suggest to the court the ways in which it might cure the defects. To the contrary, we have held that courts are within their discretion to dismiss with prejudice where a party does not make such a request or showing."); *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) ("District courts … have broad discretion to deny leave to amend where there is … repeated failure to cure deficiencies, … or where the amendment would be futile.") (internal quotation marks omitted). Zurich shall answer the surviving portions of the operative complaint by December 7, 2022.

November 21, 2022

_____
United States District Judge